# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 23-275V**

| | |
|---|---|
| MICHAEL EDSON,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Jennifer A. Shah<br><br>Filed: August 13, 2026 |

*Paul Green*, Law Office of Paul Green, Pasadena, CA, for Petitioner.
*Emily Hanson*, United States Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]**

On February 24, 2023, Michael Edson ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ("the Vaccine Program"). ECF No. 1 ("Pet."). Petitioner alleges he developed chronic fatigue syndrome ("CFS") caused by a Hepatitis B ("Hep B") vaccination he received on February 27, 2020. *Id.* at 1.

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2018)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

On January 27, 2026, Petitioner filed an application for interim attorneys' fees and costs, requesting a total of $68,505.44,[3] comprised of $58,103.44 in attorneys' fees and costs for counsel and $10,402.00 in costs for Petitioner. ECF No. 53 ("Fees App.") at 9. Respondent filed a response on February 9, 2026, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 54 ("Fees Resp.") at 2. Petitioner did not file a reply.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$63,013.34** in interim attorneys' fees and costs.

## I. Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just the financial involvement of a petitioner; it also takes into account the expenditures of counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

[3] This is incorrect. As will be discussed below, Petitioner was billed for the Court's filing fee by counsel, which was not included in Exhibit A.

### B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just Petitioners' belief in their claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis . . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs*., 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). This case has been litigated for more than three years, and both Petitioner and his counsel have incurred costs for the hiring of experts in this case. *See* Fees App., Exs. B, D. I find that under these circumstances, Petitioner would suffer undue hardship without an award of interim fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Petitioner has filed six expert reports from Drs. Akbari and Jeret in support of his claim. *See* Exs. 16, 21, 44, 45, 46, 47. I find that Petitioner has maintained a reasonable basis for his claim throughout this case. As such, I will award interim fees and costs as described below.

### C. Attorneys' Fees

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

Mr. Green has not adequately discharged this obligation. He requests a total of $40,880.00 in attorneys' fees for his work. There are, however, discrepancies between the total claimed and the amounts reflected on the submitted documentation.[4] Also, the application failed to include the Court's filing fee in its summary of the costs and fees associated with this case. Mr. Green did not separate his costs from his billed time, making it very difficult to calculate appropriate costs and deductions. I caution Mr. Green to diligently ensure his fee applications are accurate and understandable in the future.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[5]

Petitioner requests the following hourly rates of compensation for his attorney, Mr. Green: $450.00 for work performed in 2023, $470.00 for work performed in 2024, $490.00 for work performed in 2025, and $555.00 for work performed in 2026. Fees App. at 5. The rates for 2023-2025 are consistent with those granted by other special masters. *See*, *e.g.*, *Mangotich v. Sec'y of Health & Hum. Servs.*, No. 21-1458V, 2024 WL 5316648, at *3 (Fed. Cir. Spec. Mstr. July 26, 2024); *Baker v. Sec'y of Health & Hum. Servs.*, No. 21-1869V, 2025 WL 1513417, at *2-3 (Fed. Cl. Spec. Mstr. Apr. 29, 2025). Mr. Green argues that the requested rate increase for 2026 is "in line with the Office of Special Masters Attorney's Forum Rate Fee Schedule for 2026." Fees App. at 5-6. I will not explicitly endorse Mr. Green's requested 2026 hourly rate. However, due

[4] In his application, Petitioner requested $40,880.00 in attorneys' fees, but he did not explain how this number was calculated. *See* Fees App. at 6. The fees documented in the submitted records total $41,282.00, as laid out below:

(24.2 hours for work performed in 2023 x $450.00) = $10,890.00.
(11.0 hours of work performed in 2024 x $470.00) = $5,170.00.
(40.6 hours of work performed in 2025 x $490.00) = $19,894.00.
(9.6 hours of work performed in 2026 x $555.00) = $5,328.00.
$10,890.00 + $5,170.00 + $19,894.44 + $5,328.00 = $41,282.00.

Fees App., Ex. A.

[5] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2026 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

to the limited work done here, I will grant Mr. Green's 2026 request for fees in full.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs*., 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs*., 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See*, *e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

Mr. Green billed for many paralegal tasks at his full attorney rate. Examples include (but are not limited to):

- Preparing and filing Notice of Filing for Exhibits 11-15 together with Exhibits 11-15 (including formatting per Court requirements – text searchable, reduced file size PDFs, bates numbered and labelled) on September 5, 2025, by Mr. Green for 1.1 hours;

- Preparing and filing [expert reports], together with exhibits (including formatting per Court requirements - reduced file size PDF documents, text searchable, Bates numbered, and labelled on October 9, 2025, by Mr. Green for 4.0 hours;
- Multiple entries of Mr. Green "analyzing" non-PDF orders from the Court; and
- Multiple entries of Mr. Green requesting medical records.

*See generally* Fees App., Ex. A.

Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended in a case. *Wasson*, 24 Cl. Ct. at 484. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests ... [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521. Here, I will apply a 5% reduction to the overall attorneys' fees requested, or **$2,064.10**,[6] for billing for administrative and clerical tasks. Similar reductions in fees have been made in other fee decisions pertaining to Mr. Green. *See, e.g., Flores v. Sec'y of Health & Hum. Servs.,* 2022 WL 1873711, at *2 (Fed. Cl. Spec. Mstr. Apr. 22, 2022); *Boss v. Sec'y of Health & Hum. Servs.,* No. 19-1881V, 2023 WL 6366583, at *6-7 (Fed. Cl. Spec. Mstr. Jul. 21, 2023); *Baker v. Sec'y of Health & Hum. Servs.*, No. 21-1869V, 2025 WL 1513417, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 29, 2025).

Accordingly, Petitioner is awarded attorneys' fees in the amount of **$39,217.90**.[7]

### D. Reasonable Costs

Petitioner requests a total of $27,625.44 for attorneys' costs and Petitioner's incurred costs, consisting of $358.44 for medical records requests, $402.00 for the Court's filing fee, and $26,865.60 for expert costs. Petitioner has filed documentation supporting the medical records requests and filing fee, and I grant those costs in full. I will discuss the costs requested for Drs. Akbari and Jeret, as well as Petitioner's costs, below.

#### 1. Petitioner's Expert Costs for Dr. Omid Akbari, Ph.D.

Petitioner requests a total of $20,515.00 for the work performed by Dr. Omid Akbari for his expert reports, for which he claimed 37.3 hours at an hourly rate of $550.00. Fees App., Ex. B at 1-4. Petitioner cites cases where Dr. Akbari has been awarded his requested hourly rate of $550.00. Fees App. at 7-8. Other special masters have awarded an hourly rate of $500.00 for Dr. Akbari; it has also been noted that Dr. Akbari bills excessive time to prepare his expert reports. *See*, *e.g.*, *Ray v. Sec'y of Health & Hum. Servs.*, No. 20-321V, 2025 WL 2780387, at *4; *Bristow v. Sec'y of Health & Hum. Servs.*, No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing cases in which Dr. Akbari has been awarded $500.00 per hour); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311 (Fed. Cl. Spec. Mstr. Feb. 23, 2022)

[6] ($41,282.00 x 0.05) = $2,064.10.

[7] ($40,880.00 – $2,064.10) = $39,217.90.

(same).

I will grant an hourly rate of $500.00 and apply a further 10% reduction for excessive time billed, similar to what other Special Masters have done. *See, e.g., Ray*, 2025 WL 2780387 at *4-5 (reducing Dr. Akbari's requested hourly rate to $500.00 and applying a 10% reduction for excessive billing); *Baker v. Sec'y of Health & Hum. Servs.*, No. 21-1869V, 2025 WL 1513417, at *4-5 (reducing Dr. Akbari's requested hourly rate to $500.00 and applying a 20% reduction for excessive billing); *cf. Ennis on behalf of B.E. v. Sec'y of Health & Hum. Servs.*, No. 16-1148V, 2026 WL 1266185 at *20-21 (Fed. Cl. Spec. Mstr. Apr. 13, 2026) (awarding Dr. Akbari an hourly rate of $200.00). This results in a reduction of $3,730.00.[8]

2. <u>Petitioner's Expert Costs for Dr. Joseph Jeret, M.D.</u>

Petitioner requests a total of $6,350.00 for the work performed by Dr. Joseph Jeret. This total reflects 10.5 hours of work performed at an hourly rate of $500.00 per hour and two hours of work performed at an hourly rate of $550.00 per hour. Fees App., Ex. B at 7-8. Dr. Jeret has been previously awarded his requested rate of $500.00. *See*, *e.g.*, *Bettinger v. Sec'y of Health & Hum. Servs.*, No. 23-1478V, 2025 WL 3267266, at *5 (Fed. Cl. Spec. Mstr. Oct. 27, 2025); *Bryce v. Sec'y of Health & Hum. Servs.*, No. 17-1832V, 2023 WL 5666165, at *7 (Fed. Cl. Spec. Mstr. July 18, 2023). Petitioner has requested an increase to $550.00/hour "to reflect his skill and experience in the NVICP as an expert in neurology." Fees App. at 8. I am not inclined to grant the requested increase at this time. This results in a reduction of $100.00 to the amount claimed.

3. <u>Petitioner's Costs</u>

Petitioner has incurred $10,402.00 in costs for the prosecution of this case. This is comprised of $5,000.00 for Dr. Akbari's retainer, $5,000.00 for Dr. Jeret's retainer, and $402.00 for the Court's filing fee. These costs are documented. As such, I shall award Mr. Edson's costs in full.

I award Petitioner a total of **$23,795.44** in costs.[9] Mr. Edson will be awarded $10,402.00 for personally incurred costs, and Mr. Green will be awarded $13,393.44 for attorneys' costs.

## III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART** Petitioner's application. Petitioner is awarded interim attorneys' fees and costs in the total amount of **$63,013.34** as follows:

---

[8] ((37.3 hours x $500.00) x 0.9) = $16,785.00. $20,515.00 - $16,785.00 = $3,730.00.

[9] $27,625.44 - $3,830.00 = $23,795.44.

- A lump sum in the amount of **$52,611.34**, representing reimbursement of Petitioner's interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

- A lump sum in the amount of **$10,402.00**, representing reimbursement of Petitioner's personally incurred costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[10]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.